1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   UNITED STATES OF AMERICA,          CASE NO. CR10-384 MJP

11                     Plaintiff,        ORDER GRANTING MOTION FOR
                                         NEW TRIAL
12          v.

13   ANDRES RENE RODRIGUEZ,

14                     Defendant.

15

16          This matter comes before the Court on Defendant's motion for a new trial on Count

17   Seven of the superseding indictment (Dkt. No. 98), and motion for acquittal as to Count Seven

18   (Dkt. No. 99).  Having reviewed the motions, the response (Dkt. No. 102), the reply (Dkt. No.

19   104), and all related papers, the Court GRANTS the motion for a new trial, but DENIES the

20   motion for acquittal.

21                                    **Background**

22          The government filed an eleven count superseding indictment against Defendant Andres

23   Rene Rodriguez, which led to a three day trial.  Of the charges for which Defendant was tried, he

24

1   attacks his conviction on Count Seven, possession of a firearm in furtherance of a drug

2   trafficking crime in violation of 18 U.S.C. § 924(c).

3          At trial, the government put forth evidence that Defendant made three controlled sales of

4   a total of 141 oxycodone pills to an informant.  Defendant did not challenge those counts at trial

5   and the jury found him guilty.  The government prosecuted Defendant for eight other counts

6   based on evidence it gathered from a search of Defendant's residence—a converted garage in

7   Shoreline, Washington.  Officers found two bindles of cocaine, twelve oxycodone pills, a semi-

8   automatic .40 caliber FN pistol whose serial number was scratched out, ammunition and a

9   magazine for the .40 caliber pistol, two rounds of .380 caliber ammunition, and two handgun

10  holsters.  Defendant had a prior felony conviction.  The jury found Defendant guilty of

11  possession of oxycodone with intent to distribute, simple possession of the cocaine, felon in

12  possession of a firearm and ammunition, possession of a firearm with an obliterated serial

13  number, and possession of a firearm in furtherance of a drug trafficking crime (possession of

14  oxycodone with intent to distribute).

15         The government produced no direct evidence at trial that Defendant used or carried the

16  handgun or any weapon to the three controlled drug sales.  The government did present

17  circumstantial evidence the gun was used to further the possession of the 12 oxycodone pills

18  with intent to distribute.  As the government has briefed the matter, the jury heard "evidence

19  showing that Rodriguez was a professional drug dealer," learned the fully-loaded gun was found

20  inches from the oxycodone pills in Defendant's home, next to his bed, and that the gun was easy

21  to conceal and had an obliterated serial number, making it difficult to trace if discarded.  (Dkt.

22  No. 102 at 3.)

23

24

ORDER GRANTING MOTION FOR NEW TRIAL-
2

1        To tie this circumstantial evidence together the government presented Detective Mitch

2   Wright as an expert to testify as to the nexus between gun use and drug dealing.  Defendant

3   moved in limine to preclude this testimony, but the Court permitted it the narrow ground that it

4   touch on the general relationship between drug dealing and firearms, not as to Defendant's

5   mental state.  (Dkt. Nos. 37, 78.)  Detective Wright testified that the use of guns by drug dealers

6   is "just something that you see on an everyday basis.  It's typical.  It's like having a car and

7   having tires.  One goes with the other." (Dkt. No. 98-1 at 3.)  Detective Wright explained his

8   opinion about the connection between guns and drugs was  developed"[t]hrough all of the cases

9   that I've worked, all the hours on the street I've spent on patrol, all of the hours I've spent as a

10  detective, all the cases I've put together, it's just a very common linkage."  (Id.)  When pressed

11  by Defendant's counsel, Detective Wright admitted that his testimony was based on anecdotal

12  experience from his nine years in law enforcement.  Detective Wright admitted he did "no

13  research to find out what percentage of arrests in King County for drug trafficking offense

14  involved firearms."  (Dkt. No. 98-1 at 5.)  Instead, he stated that "I can only testify to my

15  experiences.  So everything I said is my personal experience."  (Dkt. No. 98-1 at 4.)  He did not

16  testify that every arrest or investigation he undertook of a drug dealer also included evidence of

17  gun use to further the drug trafficking.

18       Defendant notes the absence of other evidence linking the gun to the possession of the

19  oxycodone pills at Defendant's home.  First, there was no evidence that Defendant delivered or

20  distributed drugs at his residence.  The three controlled sales were conducted in public areas

21  away from the house.  Second, it appeared that Defendant picked up the drugs for the sales from

22  a location away from his residence before making the sales.  Third, there was little evidence that

23  Defendant used his residence as a drug storage facility or that he maintained any drug trafficking

24

1   paraphernalia.  To this end, the Court acquitted Defendant of Count Six, which charged him with

2   maintaining a drug premise, as there was inadequate evidence to sustain the charge.  (Dkt. No.

3   89.)  Fourth, Defendant was not arrested with the gun and there was no evidence he carried a gun

4   to the three controlled sales.  Fifth, the quantities of drugs found in the home were quite small,

5   and the jury found Defendant guilty of only simple possession of the cocaine.  It did find him

6   guilty of possession with intent to distribute the 12 oxycodone pills.

7          Because Detective Wright was presented as both a percipient and an expert witness, the

8   Court attempted to follow the dictates in United States v. Anchrum, 590 F.3d 795, 803-04 (9th

9   Cir. 2009), by separating his testimony into two parts: fact testimony and expert testimony.  In

10  the first phase, the prosecution failed to strictly elicit Detective Wright's testimony as a

11  percipient witness.  With a few noted exceptions, the prosecutor elicited factual testimony from

12  Detective Wright in the first phase.  After a break for lunch, the prosecution again called

13  Detective Wright to the stand, this time as an expert.  Out of the presence of the jury, the Court

14  reminded the parties that "there's only one topic that the police officer has been authorized by

15  me to give opinion evidence on, and that's the connection of the drugs and guns."  (Dkt. No.

16  104-1 at 7.)   During the prosecution's examination of Detective Wright as an expert, Defendant

17  objected on the grounds that the prosecution had not made a distinction as to the capacity in

18  which Detective Wright was testifying as required by Anchrum.  (Id. at 9-10.)  Outside of the

19  jury's presence, the Court sustained the objection and required the prosecution to make the

20  distinction clear.  (Id.)  With the jury present, the prosecution then told Detective Wright "just to

21  clarify we're calling you to testify regarding an entirely different matter, okay?  In your capacity

22  working narcotics, did you come to learn whether or not there is a connection between drug

23

24

ORDER GRANTING MOTION FOR NEW TRIAL-
4

dealing and firearms?"  (Dkt. No. 104-1 at 12.)  Defendant did not raise an objection at that

juncture and Detective Wright presented his testimony, which is set out in some detail above.

In her closing argument, the prosecutor told the jury it did not need to rely on the expert's

testimony to find Defendant used the gun in furtherance of a drug crime.  She stated: "Do you

need an expert to tell you that guns and drugs go hand-in-hand, that to be a drug dealer you need

a tool like a gun to keep you safe, to give you confidence?  Absolutely not.  You can use your

common sense."  (Dkt. No. 98-1 at 8.)  The prosecutor concluded:

> Are you firmly convinced that drugs and guns go together?  Are you firmly
> convinced that you need a gun to keep you safe if you're a drug dealer?  And are
> you firmly convinced that in order for him to sell those pills, he needed to keep
> himself alive with that gun so he can do his job?  That's it.  The government has
> proven every element of every charge beyond a reasonable doubt and we're
> asking you to return a verdict that represents what he did and who he is.

(Dkt. No. 98-1 at 9.)  The government rested and the jury returned a verdict of guilty on Count

Seven.

Before the jury returned its verdict, Defendant moved for acquittal as to Count Seven, the

§ 924(c) count.  (Dkt. No. 81.)  The Court denied the motion in open court on March 2, 2011.

After the jury returned its verdict, Defendant filed his motion for acquittal and motion for a new

trial as to Count Seven on March 17, 2011.  (Dkt. Nos. 98, 99.)

**Analysis**

A.    Standards

To succeed on a motion for acquittal, the defendant must convince the Court the evidence

was not sufficient for a rational trier of fact to find the essential elements of the crime beyond a

reasonable doubt.  United States v. Dearing, 850 F.3d 897, 900 (9th Cir. 2007).  Great deference

is owed to the jury's verdict itself.  Id.  Review of a Rule 29 motion requires the Court to view

1  the evidence in the light most favorable to the prosecution.  United States v. Alarcon-Simi, 300

2  F.3d 1172, 1176 (9th Cir. 2002).

3          Rule 33 provides that the "court may vacate any judgment and grant a new trial if the

4  interest of justice so requires."

5  B.        New Trial Needed

6          The Court finds two reasons to order a new trial as to Count Seven: (1) Detective

7  Wright's expert testimony was improperly admitted; and (2) the jury should have been instructed

8  as to the definition of "in furtherance of" as an element of § 924(c).

9          1.        Expert Testimony Crucial

10          The Court agrees with Defendant that Detective Wright's testimony was critical to the

11  jury's conviction on Count Seven.

12          18 U.S.C. § 924(c) makes it illegal to possess a firearm "in furtherance of" a drug

13  trafficking crime.  To prove Defendant guilty, the government had to show beyond a reasonable

14  doubt that Defendant possessed the .40 caliber FN semiautomatic pistol in furtherance of Count

15  Four, possession of the 12 oxycodone pills with intent to distribute.  The Ninth Circuit has held

16  the "in furtherance of" element requires the government to show "that a firearm was possessed to

17  advance or promote the commission of the underlying offense."  United States v. Rios, 449 F.3d

18  1009, 1012 (9th Cir. 2006).  "Evidence of this intent is sufficient 'when facts in evidence reveal a

19  nexus between the guns discovered and the underlying offense.'"  Id. (quoting United States v.

20  Krouse, 370 F.3d 965, 968 (9th Cir. 2004)).  Mere possession of the firearm is not sufficient, nor

21  is the fact that firearms are inherently dangerous.  Id.

22          Given the evidence produced at trial, the Court finds that Detective Wright's testimony

23  was crucial to the government's case on this charge.  The government introduced only

24

1    circumstantial evidence that the gun was used to further the drug sales, including the nature of

2    the gun, its proximity to the pills and location in the room, the holsters, and the ammunition.  Yet

3    the government presented no direct evidence Defendant carried the weapon while selling the

4    oxycodone.  To help the jury find such a nexus, the government relied heavily on the purported

5    expert testimony of Detective Wright.  Without this testimony, the Court has doubts that a

6    rational trier of fact could have found Defendant guilty beyond a reasonable doubt.

7              2.      Detective Wright's Testimony Improper

8              The Court agrees with Defendant that Detective Wright's testimony was not sufficiently

9    reliable to qualify as expert testimony.

10             Expert testimony can only be admitted if it is both relevant and reliable.  Rule 702 of the

11   Federal Rules of Evidence permits expert testimony "if (1) the testimony is based upon sufficient

12   facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the

13   witness has applied the principles and methods reliably to the facts of the case."  Expert opinions

14   are admissible if they "will assist the trier of fact to understand the evidence or to determine a

15   fact in issue."  Fed. R. Evid. 702.  Trial judges have the task to ensure "that any and all scientific

16   testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow

17   Pharm., Inc., 509 U.S. 579, 589 (1993).  This applies to all types of expert testimony, not just

18   scientific testimony.  See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999).  The

19   gatekeeping role "entails a preliminary assessment of whether the reasoning or methodology

20   underlying the testimony is . . . valid and of whether that reasoning or methodology properly can

21   be applied to the facts in issue." Daubert, 509 U.S. at 592-93.  The Ninth Circuit has held that

22   "[l]aw enforcement experts may testify as to the general practices of criminals to establish the

23   defendants' modus operandi which helps the jury to understand complex criminal activities, and

24

1   alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal

2   behavior." <u>Anchrum</u>, 590 F.3d at 804 (quotations omitted).  Here, the Court held that expert

3   testimony was permissible only "as to the expert's knowledge about the general relationship

4   between drug dealing and firearms, which may be probative of the defendant's modus operandi

5   for possessing a firearm."  (Dkt. No. 78 at 2 (citing <u>Anchrum</u>, 590 F.3d at 805).)

6        Detective Wright's testimony about the nexus between guns and drug trafficking was not

7   the product of sufficiently reliable methods and principles to be properly admissible as expert

8   testimony.  He told the jury that the nexus between guns and drugs is "like having a car and

9   having tires.  One goes with the other."  (Dkt. No. 98-1 at 3.)  Through this syllogism Detective

10  Wright effectively told the jury that drug dealers always use guns to further their drug sales.

11  This opinion was formed only anecdotally through Detective Wright's experience as an officer,

12  but it does not appear to be the product of any reliable method or principle.  Critically, Detective

13  Wright did not testify that every drug dealer he had arrested or investigated used a weapon to

14  further the underlying drug crime.  He also admitted he did not consult any data or perform any

15  research to form his opinion that guns and drugs necessarily go together.  Detective Wright's

16  opinion lacks sufficient indicia of reliability to be qualified as expert.  The testimony was also

17  prejudicial, as it allowed the jury to conclude that in every case a drug dealer uses a gun to

18  further drug trafficking.  The Court finds Detective Wright's testimony was not properly

19  admissible under Rule 702, and Defendant properly preserved the error by moving in limine and

20  moving for acquittal.

21        Counsel for the prosecution compounded the error in admitting Detective Wright's

22  testimony by stating in her closing argument that the jury could simply ignore his purported

23  expertise and assume his testimony was simply "common sense."  Counsel told the jury "Do you

24

1    need an expert to tell you that guns and drugs go hand-in-hand, that to be a drug dealer you need

2    a tool like a gun to keep you safe, to give you confidence?  Absolutely not.  You can use your

3    common sense."  (Dkt. No. 98-1 at 8.)  The government calls this "an off-the-cuff remark."

4    (Dkt. No. 102 at 7.)  Regardless of the intent of the statement, it was prejudicial.  The comment

5    told the jury to assume as common fact that every drug dealer uses a weapon in furtherance of

6    drug trafficking, despite there being no evidence to support such a conclusion.  Such a

7    conclusion would render the words "in furtherance of" a nullity in § 924(c) cases.  It was highly

8    improper to call such a conclusion common sense when no evidence, aside from Detective

9    Wright's anecdotal opinion, supported it.  The government also effectively undermined its

10   repeated argument that it needed an expert to testify as to the nexus between guns and drugs.

11   The Court does not have confidence in the jury's decision on Count Seven given this closing

12   argument and the improper admission of Detective Wright's testimony in the first instance.

13          The Court concludes that the interests of justice are served with a retrial on this count.

14   The Court is not convinced that acquittal is proper.  The government did produce some

15   circumstantial evidence as to the nexus between Defendant's drug possession with intent to

16   distribute and the possession of the firearm.  Construing that evidence in the light most favorable

17   to the prosecution, the Court cannot conclude no rational trier of fact could have found the

18   essential elements of § 924(c) beyond a reasonable doubt.

19          3.      Jury Instructions

20          The Court agrees with Defendant it should have instructed the jury as to the meaning of

21   "in furtherance of."  Defendant proposed a reasonable definition of the term, but the Court

22   rejected it after finding that the Ninth Circuit's model instructions did not require such an

23   instruction.  The lack of such an instruction causes the Court to doubt the jury's verdict was

24

1  properly rendered.  The proceedings of this case and the jury's decision on Count Seven suggest

2  to the Court that a definition as to this term was necessary to produce a sound and proper

3  outcome.  Thus, upon retrial, the Court shall instruct the jury that "'in furtherance of' means that

4  the defendant possessed the firearm to promote or facilitate that crime."  (See Dkt. No. 55 at 5

5  (citing Krouse, 370 F.3d at 967).)  The Court's failure to instruct on the definition does not

6  require acquittal, but it reinforces the propriety of granting a new trial on this count in the

7  interests of justice.

8                                           **Conclusion**

9          The Court acknowledges that it should not have permitted the jury to hear testimony from

10  Detective Wright that was not properly presented as expert testimony.  The Court also

11  acknowledges that it should have provided the jury with an instruction as to the meaning of "in

12  furtherance of" as the term is used in § 924(c).  Defendant has persuaded the Court that these two

13  errors merit the grant of a new trial on Count Seven.  The Court thus GRANTS Defendant's

14  motion for a new trial.  The Court does not find acquittal proper, however, given the other

15  evidence the government presented to the jury that could have supported a conviction.  The

16  Court DENIES Defendant's motion for acquittal.  The Court also GRANTS Defendant's motion

17  for leave to file excess pages in its reply brief, which the government did not oppose.  (Dkt. No.

18  103.)

19          The clerk is ordered to provide copies of this order to all counsel.

20          Dated this 12th day of April, 2011.

21

22

23  _____

24  Marsha J. Pechman
    United States District Judge

ORDER GRANTING MOTION FOR NEW TRIAL-
10